721 A.2d 291

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
LLOYD A. FISHER, DEFENDANT–RESPONDENT.

Argued November 9, 1998—Decided December 23, 1998.

*Steven J. Kaflowitz,* Assistant Prosecutor, argued the cause for appellant (*Thomas V. Manahan,* Union County Prosecutor, attorney).

*Paul B. Halligan,* Assistant Deputy Public Defender, argued the cause for respondent (*Ivelisse Torres,* Public Defender, attorney).

*Christine M. D'Elia,* Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*Peter Verniero,* Attorney General, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

This case involves defendant Lloyd Fisher's petition for post-conviction relief (PCR). Defendant was charged with possession of cocaine. His counsel filed a motion to suppress; however, defendant failed to appear in court on the return date of the motion, and a warrant was issued for his arrest. Counsel then withdrew the motion. When defendant was subsequently arrested, his counsel did not refile the motion. Defendant claims that his counsel's failure to refile the motion to suppress denied him effective assistance of counsel. The Court must determine whether under the law in effect at the time of defendant's rearrest trial counsel correctly concluded that defendant had waived his right to refile his motion to suppress. If counsel was wrong, we must decide whether that error deprived defendant of effective assistance of counsel.

I.

The record in this case is sparse. The facts surrounding defendant's initial arrest are taken primarily from the presentence report. No testimony was taken and no affidavits were filed.

On December 28, 1989, officers of the Plainfield Police Department were on routine patrol in a marked police vehicle. The officers saw a group of people standing in "an area second to no other area in the State for street level narcotic activity." When the group saw the officers they "appeared very nervous," and began to disperse. The officers shouted "Stop! Police." When the police began to question people, defendant fled. The officers chased defendant, and apprehended him while he was attempting to climb a chain link fence. The officers recovered paraphernalia in the area, including five plastic syringes, one glass crack pipe, a bottle cap, and one Advil bottle containing a clear fluid. A subsequent laboratory report indicated traces of cocaine residue on the paraphernalia.

On March 22, 1990, a Union County Grand Jury returned an indictment charging defendant with third degree possession of

cocaine, contrary to *N.J.S.A.* 2C:35–10(a)(1). Defendant was assigned counsel by the Office of the Public Defender. Previously, on January 1, 1990, defendant had posted bail and was released from jail. On May 3, 1990, his counsel filed a motion to suppress. Defendant, however, failed to appear in court on the return date of the motion, and a warrant for his arrest was issued. Counsel then withdrew the motion to suppress.

Three years later, defendant was apprehended and taken into custody. Counsel from the Public Defender's Office again represented defendant. On January 3, 1994, defendant pled guilty to the possession of cocaine charge. Pursuant to a plea agreement, defendant was sentenced to a three-year term of imprisonment with no parole disqualifier, concurrent to his parole revocation. A $1,000 DEDR penalty, a $50 laboratory fee, a $50 VCCB penalty, and a one-year driver's license suspension were also imposed. Counts one and two of the indictment, charging possession of a hypodermic needle and possession of narcotic paraphernalia, were dismissed.

Defendant filed a notice of appeal that was docketed on the Excessive Sentence Oral Argument Calendar. After hearing oral argument, the Appellate Division issued an order affirming defendant's sentence. Defendant then filed a *pro se* motion for post-conviction relief and a *pro se* motion to suppress evidence. Counsel was assigned to represent defendant in seeking post-conviction relief.

There is no record indicating any reason why trial counsel failed to refile the previously filed suppression motion before the plea. Defendant claims that counsel told him that she did not refile the motion because he had waived it by becoming a fugitive. The prosecutor, however, claims that counsel informed him that she had never told defendant that the suppression motion was waived and had not discussed the matter with defendant. In discussing defendant's claims for ineffective assistance of counsel, the trial court assumed, as we do for purposes of this appeal, that defendant's version of his dealings with trial counsel is correct. That is,

we assume counsel failed to refile the suppression motion because she believed a fugitive could not refile a motion to suppress.

The trial court found that counsel was not ineffective because the law at the time of defendant's rearrest and plea foreclosed a fugitive defendant from filing a motion to suppress. The court held that even if defendant was correct about the motive for his attorney's failure to refile the motion, the attorney's action was reasonable under the circumstances.

The Appellate Division reversed, holding that trial counsel's performance was deficient because she had misinterpreted the law in effect at that time. 305 *N.J.Super.* 216, 701 *A.*2d 1314 (1997). Therefore, the court remanded for a hearing to determine whether the motion to suppress would have been successful. The Appellate Division ordered the PCR court if it grants the suppression motion to vacate the conviction. We granted the State's petition for certification, 153 *N.J.* 216, 708 *A.*2d 67 (1998).

## II.

### A.

The Sixth Amendment to the United States Constitution guarantees the right to "effective assistance of counsel." *Strickland v. Washington,* 466 *U.S.* 668, 686, 104 *S.Ct.* 2052, 2063, 80 *L. Ed.*2d 674, 692 (1984) (citing *McMann v. Richardson,* 397 *U.S.* 759, 771, n. 14, 90 *S.Ct.* 1441, 1449, n. 14, 25 *L. Ed.*2d 763 (1970)). In order to prevail on an ineffective assistance of counsel claim defendant carries the burden of meeting the two part *Strickland* test.

> First, defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable.
>
> [*Strickland, supra,* 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L. Ed.*2d at 693.]

Under the New Jersey Constitution, the standard is the same. *State v. Fritz*, 105 *N.J.* 42, 53–58, 519 *A.*2d 336 (1987) (holding that defendant must satisfy *Strickland* test to show violation of Article 1, paragraph 10 of the New Jersey Constitution).

 Under the first prong of the test, counsel's performance is to be reviewed with "extreme deference ..., requiring 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....' " *Fritz, supra,* 105 *N.J.* at 52, 519 *A.*2d 336 (alteration in original) (quoting *Strickland, supra,* 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L. Ed.*2d at 693). Moreover, while applying the first prong, courts are required to make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland, supra,* 466 *U.S.* at 689, 104 *S.Ct.* at 2066, 80 *L. Ed.*2d at 694.

 Under the second prong of the *Strickland* test, prejudice is not presumed, and must be proven by the defendant. *Fritz, supra,* 105 *N.J.* at 52, 519 *A.*2d 336 (citing *Strickland, supra,* 466 *U.S.* at 692–93, 104 *S.Ct.* at 2067, 80 *L. Ed.*2d at 696–97). "Specifically, a defendant alleging [ineffective assistance of counsel] must show that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Ibid.* (quoting *Strickland, supra,* 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 80 *L. Ed.*2d at 698). To establish a *prima facie* case, the defendant must show, with the facts viewed "in the light most favorable to defendant," a reasonable likelihood of succeeding under the *Strickland* test. *State v. Preciose,* 129 *N.J.* 451, 463, 609 *A.*2d 1280 (1992); *State v. Marshall,* 148 *N.J.* 89, 158, 690 *A.*2d 1 (1997), *cert. denied,* —— *U.S.* ——, 118 *S.Ct.* 140, 139 *L. Ed.*2d 88 (1997).

 In certain contexts, such as the "[a]ctual or constructive denial of the assistance of counsel altogether," prejudice is presumed. *Strickland, supra,* 466 *U.S.* at 692, 104 *S.Ct.* at 2067, 80

*L. Ed.*2d at 696. Failure to file a suppression motion, however, is not one of those circumstances. *See Kimmelman v. Morrison,* 477 *U.S.* 365, 384, 106 *S.Ct.* 2574, 2588, 91 *L. Ed.*2d 305, 325 (1986) ("failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel"). Additionally, when counsel fails to file a suppression motion, the defendant not only must satisfy both parts of the *Strickland* test but also must prove that his Fourth Amendment claim is meritorious. *Id.* at 375, 106 *S.Ct.* at 2583, 91 *L. Ed.*2d at 319.

### B.

 In analyzing trial counsel's performance, we are required to examine the law as it stood at the time of counsel's actions, not as it subsequently developed. *Kimmelman, supra,* 477 *U.S.* at 384, 106 *S.Ct.* at 2588, 91 *L. Ed.*2d at 325 ("The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.") (citing *Strickland, supra,* 466 *U.S.* at 689, 104 *S.Ct.* at 2052, 80 *L. Ed.*2d at 674); *Elledge v. Dugger,* 823 *F.*2d 1439, 1443 (11th Cir.) ("Reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop."), *modified on other grounds,* 833 *F.*2d 250 (11th Cir.1987), *cert. denied,* 485 *U.S.* 1014, 108 *S.Ct.* 1487, 99 *L. Ed.*2d 715 (1988); *Sullivan v. Wainwright,* 695 *F.*2d 1306, 1309 (11th Cir.), *cert. denied,* 464 *U.S.* 922, 104 *S.Ct.* 290, 78 *L. Ed.*2d 266 (1983).

Assuming that counsel did not refile the motion because she believed that defendant had waived or abandoned the motion by becoming a fugitive, the Court must determine whether that was an error, and if so, whether the error was "so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra,* 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L. Ed.*2d at 693. We first analyze those cases that counsel should have considered in making her decision not to refile the suppression motion.

In *Molinaro v. State,* 396 *U.S.* 365, 90 *S.Ct.* 498, 24 *L. Ed.*2d 586 (1970) (*per curiam* ), the United States Supreme Court dismissed the appeal of a defendant who fled during the pendency of the appeal. In so doing, the court stated:

No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.

[*Id.* at 366, 90 *S.Ct.* at 498–99, 24 *L. Ed.*2d at 587–88.]

Subsequently, in *Estelle v. Dorrough,* the United States Supreme Court considered the constitutionality of a Texas statute providing for the automatic dismissal of a pending appeal by an escaped felon upon escape, and for the reinstatement of the appeal only if he voluntarily surrendered within ten days of his escape. 420 *U.S.* 534, 541–42, 95 *S.Ct.* 1173, 1177–78, 43 *L. Ed.*2d 377, 383 (1975) (*per curiam* ). In holding that the statute was constitutional, the Court recognized that "there is no federal constitutional right to state appellate review of criminal convictions." *Id.* at 536, 95 *S.Ct.* at 1175, 43 *L. Ed.*2d at 380 (citations omitted). Further, the Court noted that it "has long followed the practice of declining to review the convictions of escaped criminal defendants." *Id.* at 537, 95 *S.Ct.* at 1175, 43 *L. Ed.*2d at 380 (citing *Smith v. United States,* 94 *U.S.* 97, 24 *L. Ed.* 32 (1876); *Bonahan v. Nebraska,* 125 *U.S.* 692, 8 *S.Ct.* 1390, 31 *L. Ed.* 854 (1887); *Eisler v. United States,* 338 *U.S.* 189, 69 *S.Ct.* 1453, 93 *L. Ed.* 1897 (1949)). The Court explained that the purpose of the Texas statute was not only to deter escape, but also to "secure the State's interest in orderly judicial procedure." *Id.* at 537 n. 7, 95 *S.Ct.* at 1175 n. 7, 43 *L. Ed.*2d at 381 n. 7.

In this case, the Appellate Division relied on *State v. Prince,* 140 *N.J.Super.* 418, 356 *A.*2d 428 (App.Div.), *appeal reinstated,* 71 *N.J.* 347, 364 *A.*2d 1079 (1976) to find that counsel rendered defendant constitutionally ineffective assistance. 305 *N.J.Super.* at 219, 701 *A.*2d 1314. In *Prince,* the defendant escaped during the pendency of his appeal, and the Appellate Division dismissed the appeal.

140 *N.J.Super.* at 420, 356 *A.*2d 428 The court explained that "[v]arious courts have employed a variety of means to justify either a postponement of further consideration of litigation instituted by a criminal who subsequently escapes or a refusal further to consider it at all." *Id.* at 418, 356 *A.*2d 428. The court in *Prince* concluded:

> In any event, it is abundantly clear that a state may constitutionally "adopt a policy which deters escapes by prisoners." *Estelle v. Dorrough,* 420 *U.S.* 534, 541, 95 *S.Ct.* 1173, 1178, 43 *L. Ed.*2d 377, 383 (1975), *reh. den.,* 421 *U.S.* 921, 95 *S.Ct.* 1589, 43 *L. Ed.*2d 790 (1975).
>
> New Jersey formulated such a policy many years ago. An escape is a contempt of the judgment of the court ordering the confinement. *While in such contempt,* defendant is not entitled to the consideration of the judiciary or relief at the hands of the court. *State v. Clerk of Bergen,* 25 *N.J.L.* 209 (Sup.Ct.1855); *cf. Sarner v. Sarner,* 45 *N.J.Super.* 216, 221, 132 *A.*2d 28 (App.Div.1957), *certif. den.,* 25 *N.J.* 103, 135 *A.*2d 59 (1957).
>
> [140 *N.J.Super.* at 420, 356 *A.*2d 428 (emphasis added).]

This Court then granted the defendant's motion for leave to appeal and reinstated the appeal. *State v. Prince,* 71 *N.J.* 347, 364 *A.*2d 1079 (1976). The Court's opinion simply stated: "Motion for leave to appeal is granted; the appeal is reinstated, and the Appellate Division is directed to hear the matter on the merits." *Id.* at 347, 364 *A.*2d 1079.

In reaching its decision in this case, the Appellate Division explained that the Court's reinstatement of Prince's appeal could have two possible implications:

> Either [the Appellate Division in *Prince* was] wrong for dismissing the case because the defendant was entitled to have his appeal decided on its merits even while he was a fugitive, or else, by the time the Supreme Court considered the case, the defendant had been re-arrested and was therefore no longer in 'contempt.'
>
> [305 *N.J.Super.* at 219, 701 *A.*2d 1314.]

The panel concluded,

> [e]ither way, the Supreme Court's decision made it abundantly clear that our opinion in *Prince* was not a justification for the failure of defendant's attorney to re-file defendant's motion to suppress.
>
> [*Ibid.*]

Further, the Appellate Division noted that *State v. Rogers,* 90 *N.J.* 187, 447 *A.*2d 537 (1982), had already been decided when trial counsel made the decision not to refile the motion. *Ibid.* In

*Rogers, supra,* the defendant fled the jurisdiction while his appeal was pending. The State moved to dismiss the appeal, but defense counsel argued that the importance of the issue required the court to decide the case as though defendant were not a fugitive. The Court declined to address the issue, noting that "in most jurisdictions, courts will dismiss the appeal of a fugitive." *Rogers, supra,* 90 *N.J.* at 189, 447 *A.*2d 537. The Court extensively quoted *Molinaro, supra,* 396 *U.S.* at 366, 90 *S.Ct.* at 498, 24 *L. Ed.*2d at 588–89, for the proposition that " '[n]o persuasive reason exists why this court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes.... [W]e believe it disentitles the defendant to call upon the resources of the court for determination of his claims.' " *Ibid.*

The *Rogers* Court, however, concluded with the following quote from *Prince, supra:* "An escape is a contempt of judgment of the court ordering the confinement. *While in such contempt,* defendant is not entitled to the consideration of the judiciary or relief at the hands of the court." *Ibid.* (quoting 140 *N.J.Super.* at 420, 356 *A.*2d 428) (citations omitted) (emphasis added).

Nearly four months prior to defendant's recapture, in *Ortega–Rodriguez v. United States,* the United States Supreme Court invalidated an Eleventh Circuit rule providing that "a defendant who flees after conviction, but before sentencing, waives his right to appeal from the conviction unless he can establish that his absence was due to matters completely beyond his control." 507 *U.S.* 234, 235, 113 *S.Ct.* 1199, 1201, 122 *L. Ed.*2d 581, 588 (1993) (quoting *United States v. Holmes,* 680 *F.*2d 1372, 1373 (1982), *cert. denied,* 460 *U.S.* 1015, 103 *S.Ct.* 1259, 75 *L. Ed.*2d 486 (1983)). The Court recognized that "our cases consistently and unequivocally approve dismissal as an appropriate sanction when a prisoner is a fugitive during 'the ongoing appellate process,' " *id.* at 242, 113 *S.Ct.* at 1204, 122 *L. Ed.*2d at 593, because dismissal "serves an important deterrent function and advances an interest in efficient, dignified appellate practice." *Ibid.* (citing *Estelle, supra,* 420 *U.S.* at 537, 95 *S.Ct.* at 1175, 43 *L. Ed.*2d at 377). However, the Court

explained that it had not yet resolved "whether the same rationales support a rule mandating dismissal of an appeal of a defendant who flees the jurisdiction of a district court, and is recaptured before he invokes the jurisdiction of the appellate tribunal." *Id.* at 242, 113 *S.Ct.* at 1205, 122 *L. Ed.*2d at 593.

The Supreme Court concluded that the "justifications we have advanced for allowing appellate courts to dismiss pending fugitive appeals all assume some connection between a defendant's fugitive status and the appellate process, sufficient to make an appellate sanction a reasonable response." *Id.* at 244, 113 *S.Ct.* at 1205–06, 122 *L. Ed.*2d at 594. However, when the defendant fled before sentencing and was recaptured before appeal, "[the defendant has] flouted the authority of the District Court, not the Court of Appeals." *Id.* at 246, 113 *S.Ct.* at 1207, 122 *L. Ed.*2d at 595. The Court continued, "[t]herefore, under the reasoning of the cases cited above, it is the District Court that has the authority to defend its own dignity, by sanctioning an act of defiance that occurred solely within its domain." *Ibid.*

The Court in *Ortega–Rodriguez*, concluded:

[W]hen a defendant's flight and recapture occur before appeal, the defendant's former fugitive status may well lack the kind of connection to the appellate process that would justify an appellate sanction of dismissal. In such cases, fugitivity while a case is pending before a district court, like other contempts of court, is best sanctioned by the district court itself. The contempt for the appellate process manifested by flight while a case is pending on appeal remains subject to the rule of *Molinaro.*

[*Id.* at 251, 113 *S.Ct.* at 1209–10, 122 *L. Ed.*2d at 599.]

In 1994, subsequent to defendant's recapture and sentencing, the Appellate Division decided *State v. Canty,* 278 *N.J.Super.* 80, 650 *A.*2d 391 (1994). In *Canty, supra,* the Appellate Division held that a fugitive defendant's suppression motion should not be dismissed with prejudice. The court reasoned that the justifications for dismissing a fugitive defendant's appeal are less compelling in the context of a motion to suppress. *Id.* at 83, 650 *A.*2d 391. The panel explained that "[a]n order granting or denying a motion to suppress is fully enforceable notwithstanding the defendant's failure to appear." In appropriate circumstances, the trial

can commence *in absentia. Ibid.* (citing *State v. Hudson,* 119 *N.J.* 165, 574 *A.*2d 434 (1990); *R.* 3:16). Further, the panel stated that it did not view a defendant's escape as an abandonment of his right to object to the admission of seized evidence. According to the court, even when the defendant is a fugitive, "the rules of evidence and constitutional protections are not thereby suspended." *Id.* at 84, 650 *A.*2d 391. Therefore, in *Canty,* the Appellate Division held that when the defendant escapes during the pendency of his motion to suppress, the court should either postpone the hearing and place the case on the inactive list or proceed *in absentia. Ibid.* The matter was remanded for a hearing on the motion to suppress. The court ordered that if the motion was granted the conviction would be vacated; if it was denied, the conviction would stand. *Id.* at 85, 650 *A.*2d 391. The Appellate Division in this case concluded that because of this Court's decision in *Prince, supra,* that the decision in *Canty, supra,* was not an innovation in the law. *Fisher, supra,* 305 *N.J.Super.* at 220, 701 *A.*2d 1314.

C.

Because there was no reported opinion dealing with this precise issue, whether counsel was constitutionally ineffective is a close call. Nonetheless, we conclude that "reasonably competent counsel" would have refiled the motion to dismiss once defendant was no longer a fugitive. First, no case actually stated that a fugitive defendant waives his right to challenge the admissibility of evidence. Although one could argue that the reasoning employed in the cases dealing with appeals could be extended to prevent defendant from refiling the suppression motion, no court had actually done so. Second, and more important, both *Prince, supra,* and *Rogers, supra,* stated that "[a]n escape is a contempt of the judgment of the court ordering the confinement. *While in such contempt,* defendant is not entitled to the consideration of the judiciary or relief at the hands of the court." *Prince, supra,* 140 *N.J.Super.* at 420, 356 *A.*2d 428 (emphasis added); *Rogers,*

*supra,* 90 *N.J.* at 190, 447 *A.*2d 537 (quoting same). That statement clearly focuses on a defendant's present status as a fugitive and should have led a reasonably competent attorney to refile the motion once the defendant was no longer a fugitive. Moreover, this Court's reinstatement of the *Prince* appeal certainly could—at a minimum—have been construed to mean that because *Prince* was no longer a fugitive, his appeal should have been heard. Reasonably competent counsel would not have assumed that her client had waived his ability to challenge the admissibility of evidence, when no cases had held that the right was waived.

We, therefore, conclude that if counsel failed to refile the motion solely on the basis of her belief that defendant had waived his right to refile the motion, then counsel's performance was deficient. However, defendant has failed to offer proof of his claim that counsel's actions were based on her erroneous interpretation of the law. Defendant challenges counsel's actions based only on his belief that counsel acted because of an erroneous reading of the law. However, if counsel acted for sound strategic reasons, counsel's performance may not have been deficient. At the hearing, conflicting accounts were given of what trial counsel had advised defendant. Defendant claimed that trial counsel had told him that his fugitive status waived his right to a suppression hearing, but he provided no witnesses or affidavits to support that claim. The prosecutor, however, stated that trial counsel told him that she never told the defendant that the motion was waived.

Given defendant's lengthy prior record, his status as a fugitive, and a lab report indicating the presence of cocaine on the drug paraphernalia, it is possible that trial counsel did not refile the motion because she did not want to lose a favorable plea offer. The record is unclear whether counsel based her decision not to refile defendant's motion to suppress on strategic considerations or an erroneous interpretation of the law. Because counsel is deemed competent, those tactical considerations are relevant. The matter is, therefore, remanded for a hearing to determine counsel's reason for not refiling defendant's motion to suppress.

### III.

Regarding the prejudice prong of the *Strickland* test, if the PCR court, on remand, finds that defense counsel failed to refile the motion because of her erroneous interpretation of the law, then the court must determine whether the failure to file the suppression motion prejudiced defendant. If the PCR court concludes that failure to file the suppression motion prejudiced defendant, the court should vacate the conviction. If not, the conviction should stand. *See Canty, supra,* 278 *N.J.Super.* at 85, 650 *A.*2d 391.

The judgment of the Appellate Division is affirmed in part and modified in part, in accordance with this opinion.

*For affirmance in part, modification in part*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.