**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2450-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPHER FIGUEROA,

    Defendant-Appellant.

_____

Submitted May 25, 2017 — Decided June 20, 2017

Before Judges Hoffman and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Indictment No.
07-09-3171.

Joseph E. Krakora, Public Defender, attorney
for appellant (David A. Gies, Designated
Counsel, on the brief).

Mary Eva Colalillo, Camden County
Prosecutor, attorney for respondent (Patrick
D. Isbill, Assistant Prosecutor, of counsel
and on the brief).

PER CURIAM

Defendant Christopher Figueroa appeals from an October 26, 2015 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing.  We affirm.

I.

Charged with two counts of first-degree murder in addition to other offenses, in 2010 defendant pled guilty to one count of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1).  During the plea hearing, defendant admitted he was in a vehicle with two other men on March 8, 2007, when he purposely shot both in the head after a disagreement over money.  Consistent with the plea agreement, defendant was sentenced to a twenty-five-year term of imprisonment, with an eighty-five percent period of parole ineligibility, and the remaining charges were dismissed.  Defendant did not file a direct appeal.

In 2014, defendant filed a PCR petition as a self-represented litigant; a brief and amended petition were thereafter filed by his counsel.  The principal issues defendant raised relevant to this appeal were plea counsel was ineffective because he: (1) failed to file a motion to suppress statements defendant provided to law enforcement in violation of the Fifth Amendment;[1] 2) failed to investigate C.O., an alibi witness; (3) failed to take into consideration the recantation of a statement

_____

[1]  U.S. Const. amend. V.

2

by R.M., a State witness; (4) advised defendant he had no alternative but to plead guilty; and (5) had a conflict of interest, which induced counsel to encourage defendant to plead guilty. Defendant also argued he was entitled to withdraw his guilty plea because counsel's ineffectiveness forced him to enter the plea.

In a lengthy, comprehensive opinion, the PCR court denied defendant's petition without an evidentiary hearing. We briefly summarize the pertinent evidence.

At 10:50 p.m. on March 8, 2007, the day defendant shot both men, officers from the Camden Police Department were dispatched to the location where there had been a report of an automobile accident. The police found both victims dead in an overturned vehicle.

One week later, defendant's live-in girlfriend, R.M., gave a statement to the police. She reported defendant and co-defendant Jason Rodriguez entered her and defendant's home at midnight on March 9, 2007. Defendant brought home a black, plastic bag from which he removed $20,000 in cash. Defendant gave some cash to the co-defendant and stored the remainder in their home. R.M. observed blood on defendant's shirt sleeve, and saw him remove and put his clothes in a plastic bag.

3

Defendant then told R.M. he was leaving to discard the clothing and a gun.

R.M. further reported that, the following day, defendant returned home and told her he had been with the co-defendant and both victims the evening before. The four planned to commit a robbery and obtain $20,000. Defendant told R.M. he had an argument with one of the victims, and then shot both victims in the head. At the time of the shooting, the car was still moving; the car struck a tree and flipped over. Defendant managed to climb out of the car, taking $20,000 in cash that had been in the victims' possession.

Defendant also told R.M. he discarded the gun and the clothes he was wearing at the time of the shooting. He then gave R.M. $1,000 from the $20,000 he obtained the day before. R.M. deposited $1,000 into her bank account that day; the police later confirmed R.M. had in fact deposited this amount into her account on March 9, 2007.

On March 10, 2007, defendant advised R.M. he had bought a van and was going to Brockton, Massachusetts, where he was going to stay with family. He stated he wanted to leave New Jersey because he expected the police would be looking for him with respect to "the two dead bodies." Thereafter, R.M. agreed to a

4

consent search of her home, where dried blood was found and tested. The blood matched that of one of the victims.

Approximately six months later, R.M. purportedly hand-wrote a statement recanting her previous one. This unsigned document stated her first statement was written to hurt defendant because he had been unfaithful to her, and that defendant never told her he had committed the murders. She also stated she wrote the first statement while recovering from a caesarian section, and was under the influence of Percocet, Ibuprofen, and Diazepam to control the pain.

Approximately one month after the incident, C.O. contacted the police and also provided a statement. She told the State's investigator she was defendant's girlfriend. She reported that, on the evening of the incident, she received a telephone call from defendant between 10:00 p.m. and 10:30 p.m., advising he was coming over to her home. She recalled the time of day because FOX News was on television at the time.

C.O. then fell asleep and, at some later point, defendant arrived and stayed at her home until 8:00 a.m. the following day. She did not know when he arrived at her home. In 2015, eight years after she gave her first statement, C.O. purportedly told defendant's investigator defendant arrived at her home at

5

10:00 p.m. on the night of the incident, and spent the night in her home.

Also relevant to the issues on appeal are the circumstances surrounding defendant's custodial interview by an investigator and detective from the Camden County Prosecutor's Office. On March 17, 2007, defendant was arrested in Brockton for a parole violation. The investigator and detective traveled to Brockton to conduct the interview. As depicted on the video-recording of the interview, just before the interview, a Brockton police officer read defendant his rights pursuant to Arizona v. Miranda, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Defendant then signed a document which set forth the Miranda warnings and a statement advising he had a right to telephone an attorney, friends, or family at any time. Defendant also signed that portion of the form stating he was waiving his Miranda rights and was willing to speak to the police. Defendant told the officer he understood he only had to answer questions if he wanted and could stop at any time. The police also offered and defendant accepted water and crackers.

Also depicted is the investigator and detective's interview, at the beginning of which defendant confirmed he received his Miranda rights and knew he did not have to speak to

6

them. He also stated that despite his awareness he did not have to speak to them, he was willing to do so.

At the outset of the interview, the investigator advised defendant she and the detective wanted to talk to him because he was implicated in both murders. During the course of the interview, defendant admitted he stole money from drug dealers and had purchased two guns the week the victims were killed, but denied committing the subject homicides.

Four times during the interview defendant complained he was cold. The detective also commented it was cold in the interview room and noted defendant was not wearing pants but, as the PCR court observed, defendant was wearing a hooded sweatshirt, and other evidence revealed he was wearing "thermals." At one point during the video-recording, defendant stood up and it is clear he was wearing pants of some nature. The investigator and detective were not in heavier clothing, merely wearing suits. Defendant also commented he had been shot the previous December and was still recovering from his wounds, but at no time during the interview did he appear to be in pain or discomfort.

Defendant was indicted six months later, in September 2007. One year later, his attorney moved to be relieved as counsel because defendant was not paying his bill in accordance with the retainer agreement, and was not participating in his defense.

7

Counsel later withdrew his motion. Two years later, defendant pled guilty.

The PCR court made the following findings. On the issue counsel was ineffective because he failed to file a motion to suppress defendant's interview with law enforcement, after reviewing the evidence and various decisional authority, the PCR court determined defendant knowingly and voluntarily waived his right to remain silent before he was interviewed. Further, at no time during the four-hour interview was defendant coerced into or unable to resist making a statement he was unwilling to make.

In addition to defendant explicitly stating he knew he did not have to answer any questions and could stop the interview at any time, the court observed the police were civil toward him. The court also noted defendant appeared comfortable and relaxed throughout the interview, and even "laugh[ed] and smile[d] and appear[ed] conversant with the . . . interviewers." Thus, the court determined counsel had not been ineffective for failing to file a suppression motion, because there was no evidence defendant would have prevailed had he filed such motion.

As for counsel's alleged failure to interview and evaluate R.M.'s credibility in light of her recantation, the court found the recantation inconsequential. The court also rejected the

8

claim C.O. allegedly made in 2015 that defendant was in her home by 10:00 p.m. on the night of the incident, because the document in which such claim was asserted was not created and signed by C.O. under oath. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999) (holding when a defendant claims counsel inadequately investigated his or her case, defendant must assert facts supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification).

In addition, the court found no evidence counsel had a conflict of interest while representing defendant, not to mention some two years elapsed from the filing of counsel's motion to be relieved and the time defendant pled guilty. Finally, after examining the factors in State v. Slater, 198 N.J. 145 (2009), the court found no basis to grant defendant's motion to withdraw his guilty plea.

II.

On appeal, defendant raises the following points for our consideration.

> POINT I — THE FAILURE OF THE DEFENDANT'S
> TRIAL ATTORNEY TO INTERVIEW TWO WITNESSES,
> ONE OF WHOM PRESENTED THE DEFENDANT WITH AN
> ALIBI, OR TO PURSUE A SUPPRESSION MOTION
> LENDS CREDENCE TO THE DEFENDANT'S CLAIM THAT
> HIS TRIAL ATTORNEY'S PERSONAL INTERESTS
> MATERIALLY LIMITED HIS ABILITY TO CONSIDER,

9

RECOMMEND OR CARRY OUT THE MOST APPROPRIATE
COURSE OF ACTION.

POINT II — THE DEFENDANT'S TRIAL ATTORNEY
WAS CONSTITUTIONALLY INEFFECTIVE WHERE HE
DID NOT PURSUE A SUPPRESSION MOTION ON FIFTH
AMENDMENT GROUNDS.

POINT III — REVERSAL OF THE PCR COURT'S
DENIAL OF THE DEFENDANT'S MOTION TO WITHDRAW
HIS GUILTY PLEA IS WARRANTED WHERE HIS TRIAL
ATTORNEY WAS NOT IN POSITION TO REVIEW WITH
HIM THE STRENGTHS AND WEAKNESSES OF THE
EVIDENCE BECAUSE HE DID NOT INTERVIEW THE
ALIBI WITNESS.

Although not raised in a separate argument point, defendant also contends the PCR court erred by denying his motion to withdraw his guilty plea.

Having reviewed the briefs and the record, we are not persuaded by any of defendant's arguments and affirm the denial of defendant's PCR petition for essentially the same reasons stated in the PCR court's oral decision. However, we add the following comments.

The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). In general, in order to prevail on a claim of ineffective assistance of counsel, defendant must meet the following two-prong test: (1) counsel

10

made errors so egregious he or she was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the errors prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, supra, 466 U.S. at 687, 694, l04 S. Ct. at 2064, 2068, 80 L. Ed. 2d at 693, 698.

If seeking to set aside a guilty plea based on ineffective assistance of counsel, the second prong a defendant must meet is "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty but would have insisted on going to trial." State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)).

Here, R.M.'s recantation had limited value, because her original statement was corroborated by other, objective evidence. For example, in her first statement, R.M. claimed she saw blood on defendant's clothing within just a couple hours of the homicides. Blood found in the home matched that of one of the victim's. Further, her admission she deposited $1,000 of the $20,000 defendant reported taking from the victims after shooting them was confirmed by bank records. Other evidence

11

neatly coincides with and lends credence to the claims she asserted in her first statement. Given R.M.'s recantation would have had limited impact at trial, counsel cannot be faulted for recommending defendant accept the State's plea offer.

Defendant asserts C.O.'s 2015 statement provided him an alibi. First, the only statement C.O. made by the time defendant pled guilty was one in which no exonerating information was provided. Second, the 2015 statement contradicts the first statement, making C.O.'s credibility suspect. Unlike R.M.'s statements, where there was evidence to show her first statement was valid, there was no evidence C.O.'s second statement was reliable. Third, C.O. did not certify or attest the contents of the 2015 statement were accurate.

In addition, although we have not been provided with a transcript of his guilty plea, we are informed when the co-defendant pled guilty, he implicated defendant. Shortly thereafter, defendant pled guilty, as well.

Finally, on the question whether defendant should have filed a suppression motion, we merely add our Supreme Court has observed "[i]t is not ineffective assistance of counsel for defense counsel not to file a meritless motion." State v. O'Neal, 190 N.J. 601, 619 (2007). Here, defendant failed to show, as was his burden, his suppression claim was meritorious.

12

See State v. Fisher, 156 N.J. 494, 501 (1998). He also failed to identify an incriminating statement from defendant's interview.

In the final analysis, defendant failed to meet the first prong of the Strickland test. Accordingly, we find no error by the PCR judge in rejecting defendant's claim his counsel's representation fell below professional norms.

Finally, defendant, who was facing two life sentences, received a very favorable plea offer of twenty-five years imprisonment. He has proffered no persuasive argument that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. That is, defendant failed to meet the second prong of the Strickland test.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2450-15T3