**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4512-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LUIS A. PADILLA,

     Defendant-Appellant.

_____

Submitted October 29, 2019 – Decided January 27, 2020

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 11-05-0839.

Joseph E. Krakora, Public Defender, attorney for appellant (Suzannah Brown, Designated Counsel, on the brief).

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Luis A. Padilla appeals from an order denying his post-conviction relief (PCR) petition without an evidentiary hearing. Having reviewed the record in light of the applicable law, we affirm. The PCR court correctly determined defendant failed to establish a prima facie claim of ineffective assistance of his trial counsel.

I.

We set forth the facts supporting defendant's convictions in our decision on his direct appeal, State v. Padilla, No. A-5557-12 (App. Div. Mar. 28, 2016) (slip op. at 25), and recount the pertinent facts here. A grand jury charged defendant in an indictment with first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a).

The trial evidence showed the victim, Kevin Meisnest, lived in a second floor apartment on the property of his employer, Car Guys Auto Repair (Car Guys). When Meisnest did not appear for work on November 24, 2010, the owner of Car Guys called the Edison Police Department and requested a welfare check. Two officers responded to Meisnest's apartment and found him lying on the kitchen floor in a pool of blood. He was pronounced dead at the scene.

Meisnest died of multiple gunshot wounds to his head, chest, and back. The police investigation did not reveal any signs of forced entry into Meisnest's apartment. The police recovered a spent bullet that fell from Meisnest's head; a spent projectile under his body; and a live .357 magnum bullet on a table. No useful fingerprints were obtained.

The police recovered audio and video recordings from surveillance cameras located on the Car Guys' property and video recordings of the property from a neighboring business's surveillance cameras. The recordings captured the Car Guys' parking lot and the entrance to Meisnest's apartment.

Defendant and Meisnest were friends. Car Guys' owner knew defendant, had socialized with him at Meisnest's and defendant's homes, and was familiar with the Ford pickup truck defendant drove. The owner reviewed the surveillance recordings from the evening of Meisnest's murder and observed defendant's pickup truck going in and out of the Car Guys' parking lot.

The video recordings further showed that at 11:00 p.m. on the evening of the murder, Meisnest and another individual left his apartment and got into his flatbed truck. As they backed out, the driver exited the vehicle and engaged in a brief conversation with someone in a pickup truck. Both vehicles then left the

3

Car Guys' property. Nine minutes later, the pickup truck returned and the driver entered the doorway to Meisnest's apartment.

The flatbed truck returned six minutes later, and Meisnest exited the vehicle, slammed the door, saying "motherfucker" and "fuck." It also appears he punched or kicked his truck and said, "Lou, fuck you, what the fuck." Meisnest then entered the building in which his apartment was located, after which someone is heard saying, "Lou." Five gunshots are heard, and within minutes, the pickup truck left the parking lot. Testimony during trial described the unique physical similarities between the pickup truck shown on the recordings and defendant's vehicle.

Defendant's employer testified defendant did not appear for work on the day following Meisnest's murder. The employer called defendant, but he did not answer. The employer later spoke with defendant's aunt, Aida Padilla, who reported defendant was at her Brooklyn, New York apartment.

Defendant's girlfriend, with whom he lived, testified he left their home the evening of Meisnest's murder, but he never returned. She awoke at 4:00 a.m. and called him, but he did not answer. She continued calling him later in the morning and did not receive a response. She later learned defendant was at Aida Padilla's apartment.

The police determined defendant's cellphone was located in Brooklyn and that his aunt lived there. The police went to Aida Padilla's apartment. She initially advised the police defendant was not present. Her home healthcare aide, however, told the police defendant was in one of the bedrooms. Defendant was taken into custody.

Defendant agreed to give a statement to the investigators at a Brooklyn police station. He showed the police the location of his pickup truck and consented to a search of his belongings and the truck. Nothing of evidential value was recovered.

During his lengthy statement to the police, defendant indicated he had been at Meisnest's apartment "no later" than 8:30 p.m. the previous evening. The officers advised defendant that video recordings showed him at Meisnest's apartment at a later time, and defendant said he returned to the property about 10:00 or 10:30 p.m. to smoke marijuana with Meisnest. He said he changed his version of the events because he was reluctant to admit smoking marijuana.

During his statement, defendant repeatedly and consistently denied killing Meisnest. He told the police that in the video, he and Meisnest spoke about smoking marijuana, he then left for a short period of time to do something else, and, when he returned, he waited in the hallway for Meisnest because Meisnest

5

had not yet arrived. Defendant said that after Meisnest returned, they spoke and smoked marijuana. Defendant said he then left. The evidence showed Meisnest called defendant's phone seven times between 10:06 and 11:23 p.m. on the night Meisnest was murdered.

Aida Padilla testified at trial that a young man came to her door at 1:30 a.m. on the morning following the murder with defendant's truck keys in his hand. She said she demanded the keys, the man relinquished them, and he said the truck could be driven without the keys. She said she never told defendant about the man or reported the incident to the police during her initial statement to them.

Aida Padilla also testified she never gave defendant a gun. She also denied ever having a .38 Colt revolver that had been owned by a relative, but she later admitted having the gun briefly in 1984 or 1985. She said the gun was later stolen. Defendant's father testified the police searched his home, and he gave them a bag of bullets. He first explained that some of the bullets were missing, but later testified only one bullet was missing – the one taken and tested by the State's ballistic expert.

The State's ballistic expert testified all the bullets recovered from defendant's father could be fired from a .38 Colt revolver. He also explained

6

the projectiles recovered from the murder scene were fired from the same gun. He could not specifically identify the type of projectiles, and could only assort them by a "class" of calibers, including .357, .38, and 9-mm.

Meisnest's cousin testified he was with Meisnest on the evening of the murder. Meisnest drove his flatbed truck to his cousin's home, where they had dinner. After dinner, Meisnest and his cousin went to a pub in Meisnest's truck and then to Meisnest's apartment to feed his cats. When they left the apartment, the cousin recalled Meisnest spoke to a "guy in [a] pickup truck" who Meisnest referred to as "Luis." The cousin testified Meisnest and the individual appeared to have some type of disagreement. Meisnest then returned his cousin to his home. The cousin learned the next morning that Meisnest was dead.

The jury convicted defendant of the charges in the indictment. The court imposed an aggregate life sentence, subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, with a fifty-year period of parole ineligibility.

We affirmed defendant's convictions on appeal, Padilla, slip op. at 25, but remanded for resentencing. The Supreme Court denied defendant's petition for certification, State v. Padilla, 226 N.J. 213 (2016). On remand, the court imposed an aggregate life sentence subject to NERA's requirements with a sixty-

three-and-three-quarter-year period of parole ineligibility. Defendant did not file a direct appeal from his sentence on remand.

Defendant filed a timely first PCR petition, alleging his trial counsel was ineffective by "erroneously allow[ing] improper evidence of the crime scene [to] be submitted to the jury"; "allow[ing] improper cross-examination of the defense medical examiner"; "putting forth a[n] all or nothing defense"; and "failing to call a second expert for . . . [d]efendant." Following the assignment of PCR counsel, defendant further argued his trial counsel was ineffective by failing to: meet with defendant prior to trial; object to improper questions posed by the prosecutor during trial; and file a motion to suppress defendant's statement during the lengthy interrogation.

After hearing argument, the PCR court denied defendant's petition without an evidentiary hearing. In a detailed bench opinion, the court rejected each of defendant's claims. In pertinent part, the court determined defendant failed to demonstrate his trial counsel was ineffective by failing to challenge the admissibility of defendant's statement to the police.[1] The court analyzed

---

[1] We limit our discussion of the court's decision to its findings concerning defendant's contention his trial counsel was ineffective by failing to challenge the admissibility of his statement to the police because on appeal defendant argues only that the court erred by rejecting that claim.

defendant's claim under the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984), and adopted by our Supreme Court in <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987), and concluded defendant failed to satisfy his burden of establishing a prima facie claim of ineffective assistance of counsel. More particularly, the court found defendant relied only on bald assertions his counsel's performance was deficient, and it further concluded the record clearly established trial counsel made a reasoned, strategic decision to utilize the statement because it "allowed . . . defendant to effectively deny any involvement in the crime without being subjected to cross[-]examination."

The court entered an order denying defendant's PCR petition. This appeal followed. Defendant presents the following argument for our consideration:

> POINT I
>
> THE PCR COURT ERRED IN FAILING TO HOLD AN EVIDENTIARY HEARING ON MR. PADILLA'S CLAIM THAT TRIAL COUNSEL PROVIDED HIM WITH INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO PURSUE SUPPRESSION OF HIS STATEMENT TO POLICE.

II.

We review the legal conclusions of a PCR court de novo. <u>State v. Harris</u>, 181 N.J. 391, 419 (2004). The de novo standard of review applies to mixed questions of fact and law. <u>Id.</u> at 420. Where, as here, an evidentiary hearing

has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. We apply that standard here.

An evidentiary hearing on a PCR petition is required where a defendant establishes a prima facie case for PCR under the standard established by the United States Supreme Court in Strickland, 466 U.S. at 686, and the existing record is inadequate to resolve defendant's claim, State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)); see also State v. Preciose, 129 N.J. 451, 462-63 (1992). To establish a prima facie claim of ineffective assistance of counsel, a defendant must meet the two-part test articulated in Strickland. Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

Under Strickland's first prong, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," ibid., and that counsel's handling of the matter "fell below an objective standard of reasonableness," id. at 688. To satisfy the second prong, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," id. at 687, and that

there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. A failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition. Id. at 700; State v. Nash, 212 N.J. 518, 542 (2013).

Defendant argues the PCR court erred by finding trial counsel made a reasonable strategic decision not to challenge the admissibility of defendant's statement without first conducting an evidentiary hearing. Defendant claims "[a]ny benefit of the statement was clearly outweighed by its detriment," and the statement was damaging to defendant even though it included his repeated denials of any involvement in Meisnest's murder. Defendant also claims the "six-hour long interrogation" and the "manner of questioning" constituted "circumstances which could have been used to demonstrate the statement was not voluntary" and that those circumstances "suggested . . . there was a meritorious basis for pursuing a suppression motion." Defendant argues the PCR court should have held an evidentiary hearing to "determine whether a motion to suppress would have been successful."

Where a defendant claims trial counsel's performance was deficient by failing to move to suppress evidence, he or she must demonstrate there is a reasonable probability the motion is meritorious. Kimmelman v. Morrison, 477

11

U.S. 365, 375 (1986); State v. Fisher, 156 N.J. 494, 501 (1998). The showing must be supported by more than bald assertions. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). A defendant must allege specific facts sufficient to support a prima facie claim trial counsel's performance was deficient with "affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid. "It is not ineffective assistance of counsel for defense counsel not to file a meritless motion." State v. O'Neal, 190 N.J. 601, 619 (2007).

Defendant made, and makes, no showing supported by evidence that the motion to suppress he argues his counsel should have filed would have been meritorious. Indeed, other than his conclusory assertions about the length of the interrogation and the manner of some of the questioning, defendant presents no evidence demonstrating the State would have been unable to satisfy its burden of proving beyond a reasonable doubt he was advised of his Miranda[2] rights; he knowingly, intelligently, and voluntarily waived those rights; and his statement was voluntary and not the product of coercion, see State v. Cabrera, 387 N.J. Super. 81, 99 (App. Div. 2006), or of "pressures that over[bore]" his will, see State v. Cook, 179 N.J. 533, 563 (2004). Defendant acknowledges no such

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

showing was made; he instead argues that an evidentiary hearing was required "to determine whether a motion to suppress would have been successful."  We reject the argument because "[t]he purpose of an evidentiary hearing is to permit [a] defendant to prove that he or she was improperly convicted . . . ; it is not an occasion for the defendant to question witnesses in an indiscriminate search for . . . grounds for" PCR.   State v. Marshall, 148 N.J. 89, 158 (1997).

Defendant's failure to demonstrate the putative suppression motion would have been meritorious required the denial of his PCR petition.  See Kimmelman, 477 U.S. at 375; Fisher, 156 N.J. at 501.  Absent such a showing, defendant did not sustain his burden of establishing either that his trial counsel's performance was deficient, Strickland, 466 U.S. at 687, or that there is a reasonable probability, but for his counsel's alleged error in failing to make the motion, the result of his trial would have been different, id. at 694.  We therefore are convinced the PCR court correctly found defendant failed to sustain his burden of establishing a prima facie claim of ineffective assistance of counsel under the Strickland standard.  See id. at 700; Nash, 212 N.J. at 542.

Because defendant failed to sustain his burden of satisfying either prong of the Strickland standard on his claim his counsel was ineffective by failing to move to suppress defendant's statement, it is unnecessary to address the merits

of the court's finding counsel's decision to rely on defendant's statement constituted a reasoned trial strategy.  We note only that given the absence of any showing a motion to suppress would have been meritorious, and the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, the record supports the court's finding counsel made a reasonable and well-grounded strategic decision to rely on the statement.  The statement supplied the jury with defendant's version of the events and his consistent denial of wrongdoing in response to the officers' questions without subjecting him to the rigors of cross-examination. See, e.g, United States v. Kopp, 562 F.3d 141, 143 (2d Cir. 2009) (finding the withdrawal of a motion to suppress the defendant's statement "was a quintessential strategic decision, as he withdrew [it] with the intention of getting the entirety of his statements, which included both self-serving exculpatory and non-relevant passages, in front of the jury").

    Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4512-17T1