**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4049-17T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v

KHALIF PADEN, a/k/a
PADEN RAFEI,

      Defendant-Appellant.

_____

Submitted September 16, 2019 – Decided March 26, 2020

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 11-02-0279.

Joseph Krakora, Public Defender, attorney for appellant (Andrew P. Slowinski, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Khalif Paden appeals from an order denying his post-conviction relief (PCR) petition without an evidentiary hearing. Defendant challenges his convictions, which we affirmed on direct appeal, State v. Paden, No. A-4278-13 (App. Div. Apr. 14, 2016), on seven charges including first-degree carjacking and second-degree robbery. We find no merit to his claim the PCR court erred by denying his petition, and we affirm.

I.

Defendant was charged in an indictment with second-degree conspiracy to commit carjacking and robbery, N.J.S.A. 2C:5-2, 2C:15-2, 2C:15-1 (count one); first-degree carjacking, N.J.S.A. 2C:15-2 (count two); first-degree robbery, N.J.S.A. 2C:15-1 (count three); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (count four); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count five); second-degree possession of a handgun with the purpose to use it unlawfully against another, N.J.S.A. 2C:39-4(a) (count six); third-degree receiving stolen property, N.J.S.A. 2C:20-7 (count seven); fourth-degree credit card theft, N.J.S.A. 2C:21-6(c)(1) (count eight); and third-degree hindering prosecution, N.J.S.A. 2C:29-3(b)(4) (count nine).

A-4049-17T2

In our decision on defendant's direct appeal, we provided a complete and detailed summary of the facts established by the evidence at trial. See Paden, slip. op. at 2-6. Therefore, it is necessary only to briefly recount the pertinent facts here.

On October 17, 2010, Sawadogo Boukary was robbed at gunpoint by four men. During the robbery, Boukary saw the face of only one of the assailants; the man holding the gun. The next day, four men entered a gas station convenience store to buy cigarettes. The cashier, Roukiatou Ba, was familiar with Boukary and knew he had been robbed the previous night. When one of the men attempted to pay with Boukary's bank card, she refused to accept it.

The men left the gas station, but Ba followed them outside and alerted a nearby police officer, Officer Jose A. Dannoys, Jr., that a man attempted to use a bank card that did not belong to him. Dannoys saw four men walking away from the gas station, called for back-up, and followed the four men in his patrol car. While following the men, Officer Dannoys saw defendant toss something as he passed a local firehouse. When back-up officers arrived, Officer Dannoys detained the four men, including defendant. Afterwards, a firefighter sitting in front of the firehouse picked up the item defendant had discarded and gave it to Officer Dannoys, who determined it was Boukary's bank card.

Defendant was arrested, and the officers took the four men back to the gas station. Defendant was in one patrol car, while the other men were in a second patrol car. The officers asked Ba to exit the convenience store and identify which man attempted to use the card. Ba refused to go outside, but she looked through the window and identified defendant as the person who attempted to use Boukary's card.

The following day, Boukary went to the police station with his cousin, Ouedroago Issa. Boukary spoke French and needed Issa to translate English to French for him. Boukary and Issa met with Detective Tyrone Crawley to review a photo array. Crawley did not have any prior involvement with the investigation and did not know any details about the incident, the investigation, or the suspects. With Issa serving as a translator, Crawley read Boukary detailed instructions about the photo array procedure from a form, which Boukary signed.

Crawley separately showed Boukary six photos, numbered one through six. When he saw photo number four, Boukary said "that's it, that's it," but Crawley also showed him the remaining two photos. Following his review of all the photos, Boukary again stated photo number four was "the person" whose face he saw during the robbery. Photo number four depicted defendant.

A-4049-17T2

In a voluntary statement given to police on that same day, Boukary described his assailant as "black and short." At trial, Boukary elaborated that his assailant was wearing "a t-shirt with a kind of hat," and that both articles of clothing were black.

The jury convicted defendant of second-degree conspiracy to commit carjacking and robbery; first-degree carjacking; second-degree robbery as a lesser-included offense of the first-degree robbery charged in the indictment; third-degree aggravated assault with a deadly weapon; third-degree receiving stolen property; fourth-degree credit card theft; and third-degree hindering prosecution. The court imposed an aggregate twenty-three-year sentence subject to the requirements of the No Early Release Act, N.J.S.A. 2C:43-7.2, consecutive to sentences imposed on charges in two other indictments.

On defendant's direct appeal, he argued in part that his trial counsel was ineffective by failing to request a Wade[1] hearing to determine the admissibility of Boukary's and Ba's out-of-court identifications. See Paden, slip op. at 7-8. We noted the admissibility of the out-of-court identifications was "governed by the standards established by the United States Supreme Court in Manson v. Brathwaite, 432 U.S. 98 (1977), as adopted by our Supreme Court in State v.

---

[1] United States v. Wade, 388 U.S. 218 (1967).

 A-4049-17T2

Madison, 109 N.J. 223 (1988)," Paden, slip op. at 11; generally explained the standards, id. at 11-13; and found uncertainty as to whether the trial record alone "permit[ted] a dispositive resolution of defendant's ineffective assistance of counsel claim," id. at 13. We "conclude[d] that defendant's ineffective assistance of counsel claim is best left for a post-conviction relief petition." Id. at 14.

Defendant filed a timely pro se PCR petition, reprising his claim that his trial counsel was ineffective by failing to request a Wade hearing on Boukary's and Ba's out-of-court identifications, and by failing to file motions to suppress the out-of-court identifications. The petition, as supplemented by defendant's assigned PCR counsel, also alleged defendant's trial counsel was ineffective by "hardly ever" meeting with defendant outside the courthouse, and by failing to: provide defendant with full discovery; sufficiently cross-examine Boukary to establish defendant did not commit a carjacking; and clearly explain inconsistencies in Boukary's testimony to the jury. PCR counsel further asserted trial counsel was ineffective by failing to challenge the admissibility of the out-of-court identifications based on the police officers' alleged failure to document the identifications as required under State v. Delgado, 188 N.J. 48 (2006).

6

The PCR court heard argument on the petition, rendered an opinion from the bench denying PCR without an evidentiary hearing, and supplemented its decision with a detailed, written twenty-two-page opinion. The court provided the standard for analyzing a claim of ineffective assistance of counsel established in Strickland v. Washington, 466 U.S. 668 (1984), as adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), and explained the merits of any putative motion for a Wade hearing or to suppress the out-of-court identifications must be analyzed under the standard adopted in Manson and Madison.

The court analyzed the separate evidence related to Boukary's and Ba's out-of-court identifications and determined defendant failed to demonstrate he would have been entitled to either a Wade hearing or suppression of the identifications under the Madison and Manson standard. Thus, the court found defendant failed to establish a prima facie ineffective assistance of counsel claim based on trial counsel's decision not to request a Wade hearing and not to move to suppress the out-of-court identifications.

The PCR court also considered defendant's claim his trial counsel was ineffective by failing to move to suppress the out-of-court identifications based on the police officers' alleged failure to record the dialogue between the officers

7

and Boukary and Ba when the identifications were made, and it determined defendant failed to establish a prima facie case of ineffective assistance of counsel for failing to move to suppress Boukary's and Ba's identifications under Delgado.

Finally, the court found defendant's claims his trial counsel inadequately discussed his options and failed to provide all discovery materials were too vague to constitute cognizable PCR claims. The court entered an order denying defendant's PCR petition. This appeal followed.

On appeal, defendant presents the following arguments for our consideration:

> POINT I
>
> THE PCR COURT SHOULD HAVE HELD THAT DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY HIS ATTORNEY'S FAILURE TO FILE A MOTION TO EXCLUDE THE SUGGESTIVE EYEWITNESS IDENTIFICATIONS THAT WERE CENTRAL TO THE PROSECUTION'S CASE AT TRIAL.
>
> (a) Defendant Is Entitled to Relief Under Controlling Legal Principles Governing Petitions for Post-Conviction Relief Pursuant to R. 3:22-2 et seq.
>
> (b) The PCR Court's Decision to Deny Defendant an Evidentiary Hearing is Contrary to the Appellate Division's Prior Ruling on Direct Appeal, Which Found

that the Documentary Record Alone Was Insufficient to Decide Defendant's IAC Claims.

(c) Trial Counsel Should Have Filed a Motion Pursuant to United State[s] v. Wade, 388 U.S. 218 (1967), to Exclude the Photo Array Identification Made By Sawadogo Boukary.

(d) Trial Counsel Should Have Filed a Motion to Exclude the Photo Array Identification Made By Sawadogo Boukary for Failure to Comply with State v. Delgado, 188 N.J. 48 (2006).

(e) Trial Counsel Should Have Filed a Wade Motion to Exclude the Showup Identification Made By Roukiatou Ba.

(f) Trial Counsel Should Have Filed a Motion to Exclude the Showup Identification Made By Roukiatou Ba for Failure to Comply with State v. Delgado.

(g) Trial Counsel Provided Ineffective Assistance By Failing to Communicate Adequately With Defendant Prior to Trial.

II.

Where, as here, the court denies a defendant's PCR petition without an evidentiary hearing, we "conduct a de novo review" of the court's order. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div.) (quoting State v. Harris, 181 N.J. 391, 421 (2004)), certif. denied, 236 N.J. 35 (2018). We have conducted that review, considered defendant's arguments in light of the record, and affirm the court's order.

9

We reject defendant's claim the PCR court erred by denying his request for an evidentiary hearing because on direct appeal we deemed the trial record inadequate to determine the ineffective assistance of counsel claim. Defendant argues our decision required that the court conduct an evidentiary hearing once defendant's PCR claim was filed. Defendant misreads our decision on his direct appeal.

Although we stated the trial record "does not reveal the totality of the circumstances required to determine whether the identifications would have been admissible under the Manson/Madison standard" and lacked "information regarding the basis for trial counsel's decision not to request a hearing," we concluded only that defendant's ineffective assistance of counsel claim was "best left for a post-conviction relief petition." Paden, slip op. at 13-14. We did not order an evidentiary hearing in the event defendant filed a PCR petition, and we made clear our opinion did "not constitute an opinion on the merits of defendant's ineffective assistance of counsel claim." Id. at 14.

An evidentiary hearing on a PCR petition should be granted only when a defendant presents a prima facie case for PCR, the court determines the existing record is not adequate for resolving the claim, and the court determines an evidentiary hearing is required. State v. Porter, 216 N.J. 343, 354 (2013) (citing

R. 3:22-10(b)).  "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'"  Id. at 355 (quoting R. 3:22-10(b)).

To establish a prima facie claim of ineffective assistance of counsel, a defendant must satisfy the two-part test established in Strickland by establishing his trial "counsel's performance was deficient and . . . that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694; see also Fritz, 105 N.J. at 58.  A defendant must establish both prongs in order to obtain a reversal of the challenged conviction.  Strickland, 466 U.S. at 697; State v. Nash, 212 N.J. 518, 542 (2013).  "The test is not whether defense counsel could have done better, but whether he [or she] met the constitutional threshold for effectiveness."  Nash, 212 N.J. at 543.

Because it is inherently difficult to evaluate defense counsel's tactical decisions from his or her perspective during trial, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, [and] the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound

trial strategy.'" Harris, 181 N.J. at 431 (quoting Strickland, 466 U.S. at 689) (citation omitted). When a PCR petition is based on an alleged failure to file a suppression motion, "the defendant not only must satisfy both parts of the Strickland test but also must prove that his [claim] is meritorious." State v. Fisher, 156 N.J. 494, 500-01 (1998) (citing Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)). In other words, to succeed on his ineffective assistance of counsel claim, defendant was required to demonstrate he was entitled to a Wade hearing and his motion to suppress the out-of-court identifications would have been successful.

Defendant makes four ineffective-assistance-of-counsel claims based on his trial counsel's decisions not to request a Wade hearing or otherwise move to suppress Boukary's and Ba's out-of-court identifications. After careful review, we determine defendant failed to establish a prima facie case of ineffective assistance of counsel on any of the claims, and, therefore, the PCR court correctly denied PCR without an evidentiary hearing.

A.

Defendant first argues his trial counsel was ineffective by failing to move for a Wade hearing to suppress Boukary's photo array identification of defendant.

A trial court may hold a <u>Wade</u> hearing pursuant to N.J.R.E. 104(a) to determine whether a pretrial identification of a criminal defendant was properly conducted and therefore admissible under N.J.R.E. 803(a)(3). However, the right to a <u>Wade</u> hearing is not absolute and a hearing is not required in every case involving an out-of-court identification. <u>State v. Ruffin</u>, 371 N.J. Super. 371, 391 (App. Div. 2004). "A threshold showing of some evidence of impermissive suggestiveness is required." <u>Ibid.</u> (citing <u>State v. Ortiz</u>, 203 N.J. Super. 518, 522 (App. Div. 1985)). Impermissible suggestibility is described as follows:

> [T]he determination [of impermissible suggestibility] can only be reached so as to require the exclusion of the evidence where all of the circumstances lead forcefully to the conclusion that the identification was not actually that of the eyewitness, but was imposed upon him so that a substantial likelihood of irreparable misidentification can be said to exist.
>
> [<u>Madison</u>, 109 N.J. at 234.]

If the court finds the identification procedure was impermissibly suggestive, it must then determine whether the procedure was nevertheless reliable. <u>Id.</u> at 232-33. "The totality of the circumstances must be considered in weighing the suggestive nature of the identification against the reliability of the identification." <u>State v. Herrera</u>, 187 N.J. 493, 504 (2006).

13

In Manson, the United States Supreme Court identified five reliability factors to be considered by the trial court: (1) whether the witness had the opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty at the time of the identification confrontation; and (5) the amount of time between the crime and the confrontation. 432 U.S. at 114. If after evaluating those factors the court is convinced that, notwithstanding the suggestive nature of the procedure, the witness's identification is reliable, then the identification may be admitted into evidence. Ibid. Thus, to obtain a Wade hearing, defendant here was required to show that Boukary's identification was tainted by impermissibly suggestive procedures, and then that the identification was not reliable and should be suppressed. Madison, 109 N.J. at 232.

In arguing the photo array was impermissibly suggestive, defendant contends he was the only person wearing a black hooded sweatshirt in his photo and Boukary described his assailant as wearing black clothing. Defendant also claims Boukary's identification was not sufficiently reliable under the Manson/Madison factors because Boukary's prior description of the assailant was deficient in detail and inaccurate regarding defendant's height.

14

We find unpersuasive defendant's argument his clothing in his photo was impermissibly suggestive. During trial, Boukary described his assailant as wearing either a black jacket or t-shirt with "some kind of hat." While the small portion of the hooded sweatshirt that can be seen in defendant's photo is black, he is not depicted wearing a black jacket, t-shirt, or a hat. Moreover, each of the six photos in the array depict the face and neck of black males with short, dark hair. Each man appears the same age, and their facial features are similar.

As noted by the PCR court, the photo array was also presented by an officer who had no knowledge concerning the investigation or the identity of the suspect, and he presented the array to Boukary in accordance with the Attorney General Guidelines. Boukary immediately identified defendant as the assailant when presented with his photo, the fourth in the array, and defendant makes no showing the identification constituted an "irreparable misidentification" that was "imposed upon him." Madison, 109 N.J. at 234 (quoting State v. Farrow, 61 N.J. 434, 451 (1972)).

Even if the photo array procedure was in some way suggestive, defendant makes no showing the identification was otherwise not reliable. Defendant argues the identification was unreliable because Boukary described his assailant as "short," but the photo array did not show the size of the individuals depicted

15

and the totality of the reliability factors, Herrera, 187 N.J. at 504, including Boukary's close proximity—an "arm's length"—to the assailant holding the gun, Boukary's certainty in his selection of defendant's photo, and the short amount of time—two days—between the robbery and identification undermine any reasoned conclusion there was a substantial likelihood of irreparable misidentification requiring suppression of the identification. See Madison, 109 N.J. at 234.

Trial counsel's alleged failure to request a Wade hearing or otherwise seek suppression of Boukary's identification of defendant did not constitute deficient performance because the identification was untainted by impermissible suggestiveness and defendant makes no showing a suppression motion would have had merit. "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990); see also, State v. Taimanglo, 403 N.J. Super. 112, 124 (App. Div. 2008) ("[A]s there is no basis for reversing the conviction on the grounds asserted, there is no basis for finding that defendant was denied the effective assistance of counsel.").

Defendant failed to satisfy his burden under both prongs of the Strickland standard and therefore was not entitled to either PCR or an evidentiary hearing

on his claim his counsel was ineffective by failing to move to suppress Boukary's out-of-court identification of defendant. 466 U.S. at 694.

B.

Defendant also argues his trial counsel was ineffective by failing to move to exclude Boukary's photo array identification because it did not comply with the recording requirements at the time, as set forth in Delgado.[2] Defendant argues the officers did not adequately record the dialogue between Boukary, his cousin Issa, and Detective Crawley, when they had the opportunity to make an audio recording of the conversation, and that the records do not show which officer prepared the photo array and how the filler photographs were selected.

Addressing the admissibility of an out-of-court identification, the Court in Delgado required that:

> law enforcement officers make a written record detailing the out-of-court identification procedure, including the place where the procedure was conducted, the dialogue between the witness and the interlocutor, and the results. Preserving the words exchanged between the witness and the officer conducting the identification procedure may be as important as

---

[2] In 2012, the Supreme Court adopted Rule 3:11, which provides the conditions for admissibility of certain out-of-court identifications, including "from a photo array," and describes the requirements for recording out-of-court identification procedures. Rule 3:11 was not in effect when Boukary and Ba made the out-of-court identifications at issue on appeal. Therefore, Delgado provides the applicable standard.

17

preserving either a picture of a live lineup or a photographic array. When feasible, a verbatim account of any exchange between the law enforcement officer and witness should be reduced to writing. When not feasible, a detailed summary of the identification should be prepared. In the station house where tape recorders may be available, electronic recordation is advisable, although not mandated.

[188 N.J. at 63.]

Thus, Delgado does not mandate an audio or video recording of an identification procedure, provided the procedure is sufficiently captured in a written record.

Here, as noted by the PCR court, the police officers maintained a written record of the photo array identification procedure; the photo array; the witness instructions signed by Boukary; a photographic identification form; and a photo display report. PCR counsel did not argue the written records were deficient. In fact, PCR counsel stated during the PCR hearing "it appears that everything was done properly." We need not address the merits of defendant's argument that the records were inadequate under Delgado, see State v. Robinson, 200 N.J. 1, 20-22 (2009) (declining to address an argument on appeal because it was "not properly presented to the trial court" and did not go to the court's jurisdiction or "concern matters of great public interest" (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234-35 (1973))), other than to note we find no basis to reverse the PCR court's finding the records substantially complied with the requirements

18

of <u>Delgado</u>. We therefore reject defendant's claim trial counsel was ineffective by failing to argue Boukary's identification was inadmissible under <u>Delgado</u>.

C.

Defendant next argues trial counsel was ineffective by failing to request a <u>Wade</u> hearing and the suppression of Ba's showup identification. Defendant claims Ba's identification was tainted by impermissibly suggestive procedures because the officers placed defendant in one patrol car while his companions were placed in a second car; failed to ask in an open-ended manner whether Ba recognized anyone; and allowed Ba to make the identification while looking through the store window.

Our Supreme Court has determined "one-on-one showups are inherently suggestive . . . because the [witness] can only choose from one person, and, generally, that person is in police custody," and, therefore, "only a little more is required in a showup to tip the scale toward impermissibly suggestive." <u>Herrera</u>, 187 N.J. at 504. However, the Court also stressed that "standing alone, a showup is not so impermissibly suggestive to warrant proceeding to the second step." <u>Ibid.</u> "Each showup setting must necessarily stand or fall on its own unique facts." <u>State v. Romero</u>, 191 N.J. 59, 77 (2007).

19

In Romero, the Court considered a showup procedure conducted after a robbery victim saw a man he believed to be his attacker walking in front of his house and called the police. 191 N.J. at 78-79. After the victim accompanied the officers on an initial, unsuccessful search, the officers found defendant, arrested him, and brought him in the back of a patrol car to the victim's home. Ibid. The officers summoned the victim to the car, telling him "we have somebody that fits the description [that] you described" and "[w]hy don't you take a walk around the corner with us and see if this is the person." Id. at 78. The victim viewed the defendant through the side window of the patrol car and identified him as the attacker. Ibid.

The Court determined the procedure was not impermissibly suggestive because "it originated from the victim's own observation of someone he believed was his assailant." Ibid. The Court reasoned it would not have been an impermissibly suggestive showup if the officers and the victim had found the defendant while initially walking down the street, and the fact they separated for a few minutes did not result in "the type of showup that is fraught with the worries typically generated by a suggestive police-initiated showup." Ibid.

The Court further reasoned that after arresting the defendant, the officers told the victim "only that they had detained someone who fit the description

given by [the victim] minutes earlier." Ibid. The Court determined "[t]he fact that [the] defendant was handcuffed in the police car did not convert this showup identification into one that was impermissibly suggestive." Ibid.; see also State v. Wilson, 362 N.J. Super. 319, 327 (App. Div. 2003) ("[T]here is no question that there was suggestiveness present because the defendant was identified while seated and handcuffed in the back of a police car. However, such suggestive circumstances did not render the identification procedure per se improper and unconstitutional.")). The Court concluded that "[i]n presenting a man fitting [the victim's] unsolicited description, the police made no representations that he was the man who attacked [the victim], only that he matched [the victim's] description," and, therefore, the showup was not impermissibly suggestive. Id. at 79.

Here, Ba's identification procedure parallels the procedure upheld in Romero. Ba knew Boukary's stolen card was being used improperly, and she had a clear view of the card user during the attempted transaction. Immediately after the attempted use of the card, Ba alerted an officer about the individuals who had been in the store. After Ba made this initial identification, the officer kept the individuals under surveillance until they were detained and returned to the store in police vehicles. As the Court reasoned in Romero, if Ba had

21

accompanied the officer she alerted while he followed the individuals and then made her second identification, there would be no viable claim of impermissible suggestiveness. The period during which the officers were separate from Ba was brief – the time between the attempted use of the card and the showup identification was roughly twenty minutes – and did not result in "the type of showup that is fraught with the worries typically generated by a suggestive police-initiated showup." Romero, 191 N.J. at 78.

When the officers returned to Ba with the four individuals to perform the showup identification procedure, Officer Dannoys asked Ba "[i]s that the individual that you saw try to use the credit card." In phrasing the question this way, Officer Dannoys did not alert Ba that he observed defendant discard the credit card or suggest that defendant had attempted to use the card or was a suspect in the robbery. Rather, he merely asked Ba to confirm the identification she unilaterally and voluntarily made to him minutes earlier. This was similar to Romero, where the officers told the victim they detained someone matching his earlier description, without suggesting he was the assailant. In addition, as in Romero, Ba's showup identification was consistent with her first identification, which she initiated on her own, of the group of individuals who left the store following the attempted use of Boukary's credit card.

Further, although the Court in <u>Romero</u> acknowledged it was suggestive to have a person handcuffed in a patrol car, it determined such action was not per se impermissibly suggestive; especially when the witness initiated the identification, only a brief amount of time passed, and the officers did not ask impermissibly suggestive questions. <u>Id.</u> at 78-79. We apply the same reasoning here and conclude the showup procedure at the gas station was not impermissibly suggestive.

In addition, defendant makes no showing Ba's identification was not reliable, and the record otherwise shows that it was. Ba had the opportunity to view defendant at the store counter when the stolen card was presented; she immediately directed the officer to the group of men, including defendant, who attempted to use the stolen card; and she was certain of her identification that she made only twenty minutes after defendant presented the stolen card. <u>See</u> <u>Madison</u>, 109 N.J. at 234 (finding "sufficient reliability in the identification[] to overcome the suggestive nature and establish that there was not a substantial likelihood of irreparable misidentification").

Defendant fails to demonstrate his counsel's performance was deficient by not requesting a <u>Wade</u> hearing or moving to suppress Ba's out-of-court identification, and he makes no showing that but for his counsel's purported error

the result of his trial would have been different. The court correctly rejected his PCR claim and his request for an evidentiary hearing because he failed to satisfy either prong of the Strickland standard. Strickland, 466 U.S. at 697; Nash, 212 N.J. at 542.

D.

Defendant also argues trial counsel was ineffective by failing to move to exclude Ba's identification under Delgado. Specifically, defendant contends there is no documentation of Ba's showup identification in the police reports for defendant's arrest; Ba provided no description of the suspect; police provided no record of their dialogue with Ba; and the identification was never mentioned in any reports or properly documented until Officer Dannoys testified before the grand jury about the showup.

There is no dispute the police did not mention Ba's identification in their written records about defendant's arrest, and Delgado requires some "written record" of out-of-court identifications. 188 N.J. at 63. Therefore, trial counsel may have succeeded had he moved to exclude Ba's identification under Delgado. However, even if we assume trial counsel's performance was deficient by not moving to exclude Ba's identification, defendant must also satisfy the second

prong of the <u>Strickland</u> standard to establish a prima facie case of ineffective assistance of counsel. <u>Nash</u>, 212 N.J. at 542.

Defendant fails to satisfy <u>Strickland</u>'s second prong. In his brief, defendant addresses the second prong of <u>Strickland</u> with only the conclusory assertion that, "[w]ithout Ba's testimony at trial . . . there is a substantial probability that defendant would have been acquitted."

However, even without Ba's out-of-court identification, the jury would have heard her testimony that an individual accompanied by three others attempted to use Boukary's stolen card; Ba immediately identified the group of individuals to Officer Dannoys; Officer Dannoys saw defendant discard Boukary's bank card; and Boukary identified defendant as the assailant who held the gun during the robbery. Given the strength of this evidence, defendant did not demonstrate "a reasonable probability that . . . the result of the proceeding would have been different," <u>ibid.</u>, if Ba's out-of-court identification had been suppressed. Defendant's failure to satisfy <u>Strickland</u>'s second prong requires the denial of PCR on his claim his counsel was ineffective by failing to move to suppress Ba's out-of-court identification. <u>See</u> <u>State v. Gaitan</u>, 209 N.J. 339, 350 (2012) ("Although a demonstration of prejudice constitutes the second part of the <u>Strickland</u> analysis, courts are permitted leeway to choose to examine first

whether a defendant has been prejudiced, and if not, to dismiss the claim without" regard to whether "counsel's performance was constitutionally deficient").

E.

We also address defendant's argument his trial counsel was ineffective by failing to communicate adequately with him prior to trial. Defendant contends that, although the PCR court found his claims to be overly vague and lacking in specificity, he intended to supply additional detail when he testified before the PCR court "to provide further support for his claims of inadequate preparation and consultation."

This claim is without merit. "[A] defendant is not entitled to an evidentiary hearing if the 'allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing.'" Porter, 216 N.J. at 355 (quoting State v. Marshall, 148 N.J. 89, 158 (1997)). "Rather, defendant must allege specific facts and evidence supporting his allegations." Ibid.

Here, defendant fails to identify with specificity what trial counsel allegedly failed to communicate and to demonstrate how, if such communications had been made, they would have affected the trial proceedings.

26

Defendant's claim is too vague and conclusory to establish a prima facie case sufficient to warrant an evidentiary hearing.  Ibid.

F.

We last address defendant's claim the court erred by denying his PCR petition without an evidentiary hearing.  We find the argument without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2), other than to note that an evidentiary hearing was not required because defendant failed to establish a prima facie case of ineffective assistance of counsel on any of his claims.  See Marshall, 148 N.J. at 157-58 (explaining an evidentiary hearing on a PCR petition is not required where a defendant fails to establish a prima facie case of ineffective assistance of counsel).

Any of defendant's remaining arguments we have not addressed directly are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4049-17T2